UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

DON BLACK                                                                PLAINTIFF
ADC #113670

V.                          No. 5:18CV00197-DPM-JTR

GERALDINE CAMPBELL,
APN, Medical Services, ADC, *et al.*                              DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Marshall can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

In this *pro se* § 1983 action, Plaintiff Don Black ("Black"), a prisoner in the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC"),

alleges that Defendants APN Geraldine Campbell ("Campbell") and APN Terri Moody ("Moody") violated his constitutional right to receive timely and adequate medical care. Specifically, he alleges they allowed months to go by before looking for and locating the medical records from his gastroenterologist, who had found that Black required hemorrhoid surgery. This resulted in a six-month delay in him receiving this surgery. During those six months, Black alleges that he endured severe pain and bleeding. *Docs. 2 & 5.*[1]

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts, arguing that all of Black's claims should be dismissed because he failed to exhaust his available administrative remedies. *Docs. 23-25.* Black has filed several Responses. *Docs. 28-34.*

For the reasons explained below, Defendants' Motion for Summary Judgment should be denied.[2]

---

[1] On March 15, 2019, the Court dismissed: (1) Black's claims against Correct Care Solutions and the ADC; and (2) his pendent state tort claims for assault and battery. *Docs. 6 & 7.*

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

## II. Discussion

### A.     ADC Requirements for Exhausting Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory." *See also Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) fully and properly exhaust their available administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process before filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 14-16 §§ IV(E)-(G) ("AD 14-16").[3] "If no one responds at Steps One and Two – or if the responses at those steps are dissatisfactory – an inmate may appeal to the level of ADC's 'Chief Deputy/Deputy/Assistant Director' at Step Three." *Muhammad*, 933 F.3d at 997-98. For medical grievances, the Step Three appeal goes to the Deputy Director for Health and Correctional Programs. AD 14-16 § IV(G)(4).

The ADC administrative grievance policy requires that, in connection with each claim, a prisoner must "*specifically name each individual involved*," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] *personnel involved* or witnesses." AD 14-16 § IV(C)(4) & (E)(2) (emphasis added). The grievance forms themselves contain these instructions to ensure prisoners are aware of them. AD 14-16, Att. 1 ("[B]e specific as to the complaint, date and place, name of personnel involved and how you were

---

[3]Defendants submitted a copy of AD 14-16 with their summary judgment papers. *Doc. 25, Ex. A, Att. 1*.

affected."). Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. AD 14-16 § IV(N); *see also* § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

### B. Defendants' Motion for Summary Judgment

Defendants Campbell and Moody admit that Black proceeded through all three steps of the exhaustion process on medical grievance EAM-18-00916, before he initiated this action. However, because that grievance failed to specifically name either of them or assert any specific wrongdoing against them, they contend it cannot be relied on to establish that Black properly exhausted his administrative remedies against them.[4]

In his Response to Defendants' Statement of Facts, Black acknowledges that all of his claims are based on EAM-18-00916. *Doc. 29 ¶ 14.* Because both sides agree that EAM-18-00916 was fully exhausted, the only remaining issue is whether the procedural flaws in EAM-18-00916 prevented the reviewers of that grievance

---

[4]Failure to exhaust administrative remedies is an affirmative defense that Defendants must prove. *Jones*, 549 U.S. at 216. In support of their Motion, Defendants submitted: (1) a Declaration, dated May 22, 2019, from Shelly Byers, the ADC's Assistant Medical Services Manager, *Doc. 25, Ex. A*; and (2) Black's relevant grievance documents, *id., Ex. A, Att. 2.*

5

from understanding the nature of Black's inadequate and delayed medical care claims and the specific individuals against whom he was asserting those claims.

1. Black's § 1983 Claims

In his Complaint, Black alleges that, on February 3, 2018, an off-site gastroenterologist recommended that he have hemorrhoid surgery. Thereafter, Campbell and Moody caused him to "endure a prolonged period of serious and severe physical pain by having unjustifiably ignored [his] need for surgery and a follow up visit/consult/interview." In a later pleading, Black made it clear this delay resulted from their failure or refusal to locate and review his medical records, which included a note from his gastroenterologist stating that Black needed hemorrhoid surgery.[5] According to Black, it was only *after* he filed a grievance that Defendants located and reviewed his medical records, and then approved the surgery and scheduled a follow-up appointment. *Doc. 2 at 4-5; Doc. 5 at 1-2.*

---

[5] On October 1, 2018, Black filed an Amended Complaint in which he alleged that: (1) APN Campbell and APN Moody were the only medical personnel who could look over his records and approve the hemorrhoid surgery recommended by the gastroenterologist; (2) they had been unable to find his medical records from the gastroenterologist for months, even though the records were in the infirmary the whole time, and that he notified each of them "about this situation" through requests and sick call slips; and (3) even though he was being seen by various ADC medical personnel during the six-month delay, they were unable to render adequate medical care because his records could not be located, which prevented him from receiving the surgery he required. *Doc. 5 at 1-2.* Finally, in his Amended Complaint, Black acknowledged that, on some unspecified date, he had "finally" received the hemorrhoid surgery. *Id. at 1.*

2. Grievance EAM-18-00916

On April 4, 2018, Black filed a Step One informal resolution which stated the following:

> I went to the G.I. Clinic at [Ouachita] River Unit in Malvern and I seen the G.I. Doctor on 2-3-18 and I would just like to know was a follow-up appointment set for me.

*Doc. 25, Ex. A, Att. 2 at 4.* He did not name the specific medical provider who was responsible for failing to schedule "a follow-up appointment."

On April 5, 2018, Black received the following response to his informal resolution: "Your records have to be reviewed by the on-site provider and if a follow-up appointment is necessary the recommendation will be made." *Id.*

On April 19, 2018, Black completed the portion of the ADC grievance form required to proceed with a Step Two formal unit-level grievance, and it was assigned grievance number "EAM-18-00916." In completing the Step Two form, Black made it clear he had now been waiting "three months" for his follow-up appointment and it still had not been scheduled: "I need my records reviewed by the provider. It's been three months already." *Id.* He did not specifically name anyone at Step Two, and he used the phrase "the provider" to identify those individuals who had not yet located and reviewed his medical records, something that was required before "the provider" could schedule his "follow-up" appointment with a "G.I. doctor."

7

On May 30, 2018, a non-party Health Services Administrator ("HSA") submitted the following Response to EAM-18-00916:

> After reviewing your records, the results from your GI Clinic have been requested three times but have not been received to be reviewed by the provider. Due to this fact your grievance is *with merit*. I have asked our Medical Records Clerk to request these records again so the provider can review them and make any necessary recommendations and to let you know of any follow up consults.

*Id. at 5* (emphasis added). Importantly, even though Black had *not* named the specific individuals who had failed to locate and review his medical records and schedule a follow-up appointment, the HSA proceeded to investigate Black's claims and determine that his grievance *had merit*. Thus, the HSA elected *not* to use Black's failure to name any specific medical providers as a ground for denying the grievance based on that procedural defect.

On May 31, 2018, Black filed his Step Three appeal to the ADC Deputy Director. In his appeal, he helpfully noted that "someone" should contact the gastroenterologist at his "personal office" because he "may have the records." *Id.* Rather than denying Black's appeal on the procedural ground that he still had not named the specific individuals who had failed to locate and review his medical records and then schedule a follow-up appointment with a gastroenterologist, the Deputy Director investigated the matter and *identified* the individuals that Black had only referred to as "the provider." In his decision, the Deputy Director concluded that Black's complaint about the delay in scheduling his surgery "is with merit":

8

> A review of your electronic Medical Record indicates on June 12, 2018, *APN Campbell* noted that a record review revealed you were seen by Dr. Brevings on February 3, 2018, and a recommendation for surgery was made. APN Campbell submitted a surgery consult at that time. On June 28, 2018, you were seen by *APN Moody* and made aware that you have a consult for surgery and you were given verbal instructions regarding your medical treatment. As of July 17, 2018, you have a pending appointment for the surgery consult.
>
> The medical department found your grievance with merit and you were made aware of the GI doctor's recommendations. Due to the delay in scheduling your surgery this appeal is *with merit*.

*Id.* at 6 (Deputy Director's Step Three Decision dated July 17, 2018) (emphasis added).

Thus, even though Black did *not* name or describe the medical providers who had created the delay in his medical treatment, the Deputy Director was able to identify Campbell and Moody as the individuals responsible for locating and reviewing Black's medical records and scheduling his follow-up appointment with a specialist.[6] The Deputy Director's decision advised Black that: (1) his grievance was found to *have merit*; (2) his hemorrhoid surgery was now scheduled; and (3) until it occurred he would receive interim treatment from ADC healthcare providers.

---

[6]During discovery, both sides will have an opportunity to fully develop the facts regarding the actual role and involvement of Campbell and Moody in creating the alleged delay in Black receiving the medical care he required for his hemorrhoids.

9

### 3. Analysis of Defendants' Exhaustion Argument

It is undisputed that Black did *not* name Campbell or Moody in any of his grievance papers complaining about "the provider" failing to locate and review his medical records on a timely basis, and then schedule a follow-up appointment with a gastroenterologist. It is also undisputed that the HSA, at Step Two, and the Deputy Director, at Step Three, overlooked that serious procedural flaw, investigated the claim raised by Black in his grievance, and decided it was "with merit." Furthermore, the Deputy Director identified Campbell and Moody as "the providers" whose job involved locating and reviewing Black's medical records and then scheduling any required follow-up appointments with a specialist.

Thus, by the time the Deputy Director concluded that Black's grievance had merit, he knew the nature of Black's claims regarding the delay he experienced in receiving medical care, and the names of the two individuals whose jobs required them to locate and review Black's medical records and schedule any follow-up appointments with the specialist that needed to examine Black. Accordingly, Campbell and Moody have no legal or factual basis for challenging the procedural deficiencies in EAM-18-00916 (which the Deputy Director waived before personally curing those deficiencies in his Step Three decision) or using them as a ground for claiming Black failed to properly exhaust his administrative remedies.

In *Hammett v. Cofield,* 681 F.3d 945, 947 (8th Cir. 2012), the Court held that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." The benefits of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* (quoting *Jones,* 549 U.S. at 219). As the Court explained in *Hammett*:

> These benefits are fully realized when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits, even if the decision-maker could have declined to reach the merits because of one or more procedural deficiencies. A complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective. This rule also takes into account the likelihood that prison officials will benefit if given discretion to decide, for reasons such as fairness or inmate morale or the need to resolve a recurring issue, that ruling on the merits is better for the institution and an inmate who has attempted to exhaust available prison remedies.

*Id.* at 947-48. *Accord: Burns*, 752 F.3d at 1141 (PLRA exhaustion requirement is satisfied where prison officials "decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits"); *Axelson v. Watson,* No. 5:15cv241-BSM, 2016 WL 6573956, at *1 (E.D. Ark. Nov. 4, 2016) ("[T]he [claims] in which the failure to name a defendant requires dismissal are those [claims] in which the failure … prevented the ADC from investigating the

11

grievance on the merits."); *Daniels v. Hubbard,* No. 5:14cv360-BSM, 2015 WL 9222627, at *2 (E.D. Ark. Dec, 17, 2015) (where the ADC's investigation addressed the grievant's concerns and acknowledged a defendant's involvement, it cannot then "resurrect a flaw in grievance procedure after deciding the grievance on the merits").

At this early stage in the case, the *only issue* before the Court is whether Black should be allowed to proceed with the delayed medical care claim contained in his fully and properly exhausted grievance against Campbell and Moody. While Defendants raise several arguments suggesting Black's claims against them are without merit, they can only be resolved after both sides have had the opportunity to conduct discovery.[7] *See Emery v. Kelley,* No. 1:18cv55-DPM, 2019 WL 489094, at *1 (E.D. Ark. Feb. 7, 2019) (holding that exhaustion requirement was satisfied where ADC was able to fully investigate the merits of grievance naming only "ADC officials," and, "if [the defendants] weren't involved in [the grieved conduct], then they can argue that in a motion on the merits").[8]

---

[7]On October 23, 2019, the Court vacated the previously set discovery and dispositive motions deadlines in light of Defendants' Motion for Summary Judgment on the issue of exhaustion. *Doc. 36.* After a final ruling has been entered on the Motion, new deadlines will be imposed.

[8]Black has submitted some of his medical records, which indicate that APN Campbell and APN Moody *both knew* about his complaints concerning the delay to him receiving surgery. Furthermore, both of them were in a position to locate and review his medical records and approve the surgery. For example, one week after Black received his April 5, 2018 Step One informal resolution response notifying him that his "records" needed to be "reviewed" by "the on-site provider," APN Campbell performed a "record review" of Black's then-incomplete records and consulted with the medical records clerk about obtaining the "GI consult" report. *Doc. 25, Ex. A, Att. 2 at 4; Doc. 29 at 20* (04/12/2018 Health Services Encounter). On April 27, 2018, APN

## III. Conclusion

Accordingly, because Black fully and properly exhausted EAM-18-00916, he should be allowed to proceed with the § 1983 claims he is asserting against Campbell and Moody, and their Motion for Summary Judgment should be denied.

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 23*) be DENIED, and that Black's claims against them be allowed to proceed.

DATED this 24th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

Campbell again consulted with the medical records clerk about obtaining the off-site records. *Doc. 29 at 19.* Finally, after the HSA found Black's Step Two grievance "with merit" on May 30, 2018, and directed that the records be obtained so that "the provider" could review them and make any necessary recommendations, APN Campbell was the one who obtained and reviewed those records, and then submitted a surgery consult. *Doc. 25, Ex. A, Att. 2 at 5-6.*

This evidence shows that, as early as April 2018, APN Campbell was aware of Black's medical condition and the missing gastroenterologist records, and that she was in a position to facilitate locating those records, reviewing them, and making the needed recommendations. The fact that APN Campbell took action only after Black alerted ADC officials to the need for intervention suggests that she and/or APN Moody may have been able to do so *before* Black had to file a grievance to bring resolution to the matter.